IN THE CIRCUIT COURT OF THE FOURTH
JUDICIAL CIRCUIT, IN AND FOR DUVAL
COUNTY, FLORIDA

CASE NUMBER:                     99-0755y

DIVISION:            **DIVISION CV-H**

DANIEL M. JOUBERT,

          Plaintiff,

vs.

OLD KENT MORTGAGE COMPANY, a
foreign corporation; and MAJESTIC
MORTGAGE COMPANY, a Florida
corporation,

          Defendants.

_____

## COMPLAINT

Plaintiff, DANIEL M. JOUBERT (hereinafter "Joubert"), by and through his undersigned

attorney, brings this suit against OLD KENT MORTGAGE COMPANY, a foreign corporation

(hereinafter "Old Kent"), and MAJESTIC MORTGAGE COMPANY, a Florida corporation

(hereinafter "Majestic"), and alleges:

### GENERAL ALLEGATIONS

1.     This is an action at law for damages in excess of $15,000.00.

2.     Joubert is a resident of Duval County, Florida.

3.     Old Kent is a Michigan corporation doing business in Duval County, Florida.

4.     Majestic is a Florida corporation doing business in Duval County, Florida.



5.     On December 29, 1998, Joubert closed on the purchase of a single family residence he purchased from Maronda Homes which is located at 12622 Ash Harbor Drive, Jacksonville, Florida, 32224.

6.     The closing was at American First Coast Title Service's office in Duval County.

7. .     On information and belief, Plaintiff asserts that Old Kent is and was the mortgage lender on his mortgage note and loan, which was a federally related loan.

8.     On information and belief, Majestic was the mortgage broker, lender or correspondent lender for Joubert's mortgage.

9.     Joubert requested that Majestic provide the lowest interest rate for his mortgage loan, and entered into a fiduciary relationship with Majestic, which relationship was in effect at the date of closing, to-wit:  December 29, 1998.

10.     Joubert's interest rate on his mortgage loan is 7% with an annual percentage rate of 7.2034%, according to the Truth-in-Lending disclosure received at settlement closing. See Truth-in-Lending Statement attached as Exhibit "A."

### COUNT I
### (Non-Disclosure)
### (Chapter 494, Florida Statutes)

11.     Joubert realleges Paragraph 1 through 10 as if fully set forth herein.

12.     Majestic and Old Kent had a duty to conspicuously and clearly disclose the itemized charges applicable to Joubert's settlement. Joubert was never provided with a signed and dated good faith estimate itemizing these costs as well as all costs, fees, expenses and premiums charged, paid or financed under the mortgage loan.

13.     Majestic and Old Kent had statutory duties (Chapter 494, Florida Statutes, as to Majestic and 12 U.S.C. Section 2601, et. seq., as to Old Kent) to Plaintiff to provide full and

-2-

complete good faith disclosures to Plaintiff with respect to the loan and mortgage transaction and all monies, fees, charges and premiums paid or payable thereunder at settlement closing, which they each failed to do.

14.     Plaintiff is entitled to reasonable attorney's fees.

WHEREFORE, Joubert demands judgment for damages against Defendants for damages, pre-judgment, on liquidated damages, interest, costs, attorney's fees and a trial by jury on all triable issues.

**COUNT II**
**(Unjust Enrichment)**

15.     Joubert realleges Paragraphs 1 through 10  and 25 as if fully set forth herein.

16.     Joubert has conferred a benefit on Old Kent and Majestic by paying money to these Defendants for purported services related to the settlement, as more particularly set forth on HUD-1, attached as Exhibit "B" and "BB." (Two different HUD-1 forms were completed.  Exhibit "B" is date stamped December 31, 1998, and Exhibit "BB" has no date stamp on it.)

17.     Defendants have accepted and retained the benefits conferred by Joubert by accepting Joubert's payments unlawfully by failing to disclose all terms and conditions as well as amounts of fees and premiums paid out of closing to Majestic and/or Old Kent out of closing.

18.     It is inequitable for Defendants to retain the value thereof.

WHEREFORE, Joubert demands judgment against Defendants for damages plus pre-judgment interest on liquidated damages and costs and request trial by jury on all triable issues.

**COUNT III**
**(Negligence)**

19.     Joubert realleges Paragraphs 1 through 10, 16, 17 and 25, as if fully set forth herein.

20.     Majestic, while acting as a Florida mortgage broker between Joubert and Old Kent, the lender, had a duty to disclose, among other information to Plaintiff, all rates, points, fees and other terms quoted by or on behalf of the lender to Joubert, including monies, fees and premiums to be paid by or on account of Plaintiff from the lender to the broker.

21.     Majestic failed to disclose, among other things, but not limited to, rates, points, fees, premiums and other monies paid by or on behalf of Old Kent to Majestic, or retained by Majestic and/or Old Kent.

22.     Because of Majestic's failure to disclose the above information to Plaintiff, said Plaintiff suffered pecuniary losses and has made payments of monies and premiums not previously disclosed to him as he was unable to determine the true rates, points, fees and other terms of his mortgage loan, before closing.

23.     Plaintiff is required to make mortgage payments of principal and interest in the future on the Note and Mortgage, attached as Composite Exhibit "C" hereto and will suffer future losses and damages because of the contractual obligation to pay unjustified and non-disclosed monies to the mortgagee.

WHEREFORE, Joubert demands judgment for damages against Defendants for damages, pre-judgment interest on liquidated damages, costs, attorney's fees and a trial by jury on all triable issues.

## COUNT IV
### (Violation of Real Estate
### Settlement Procedures Act, 12 U.S.C.
### Section 2601, et. seq., and Regulation X)

24.     Joubert realleges Paragraphs 1 through 10, 16 and 17 as if fully set forth herein.

25.     This Court has jurisdiction has concurrent jurisdiction under 12 U.S.C., Section 2601, et. seq., and Regulation X, known as the Real Estate Settlement Procedures Act, as amended.

26.     Majestic did not provide Joubert with a good faith estimate conspicuously and clearly disclosing, in writing, among other information required by applicable Federal law governing federally related mortgage loans on residential property, but not limited to, the applicable rates, points, premiums, fees and other terms paid or charged by or on behalf of Old Kent and/or Majestic, the lender and broker in the closing transaction.

27.     Majestic had a duty to provide Joubert with this good faith estimate under Federal law, which Plaintiff was likely to incur in connection with the settlement of the mortgage loan at closing under 12 U.S.C., Section 2604, and Regulation X, Section 3500.2(b).

28.     Majestic had a common law and statutory fiduciary duty to Joubert that it would secure for him the lowest possible mortgage loan interest rate and all costs and expenses attendant thereto, thereby inducing him to finance his mortgage through a mortgage lender.

29.     Joubert relied upon Majestic's assertion and this material misrepresentation in financing his mortgage with Old Kent through Majestic.

30.     Joubert was financially damaged through his reliance upon Old Kent's and Majestic's false, misleading or incomplete representations in one or more of the following ways:

A.     Failure to provide a good faith estimate of all charges, fees and premiums to be paid by or on account of Plaintiff at closing;

B.     Failure to secure the lowest possible mortgage interest rate, including costs, fees and premiums paid by or on account of Plaintiff to the broker and lender;

C.     Failure to comply with the provisions of Regulation X of R.E.S.P.A., as amended, and applicable to the referenced closing.

-5-

D.   By the lender paying a "premium" to the broker for the benefit of those parties based upon broker placing the loan with said lender, with payment of said premium paid by Plaintiff, financed into the loan for future payment and the Plaintiff receiving no service therefrom.

WHEREFORE, Joubert demands judgment for damages against Defendants for damages, pre-judgment interest on liquidate damages, costs, attorney's fees and a trial by jury on all triable issues.

TROMBERG & SAFER

Fred Tromberg, Esquire (FBN: 246514)
James A. Kowalski, Jr., Esquire (FBN: 852740)
Christopher J. Karpinski, Esquire (FBN: 0041599)
4925 Beach Boulevard
Jacksonville, FL 32207
Telephone: (904) 396-5321
Facsimile: (904) 396-5730
Attorneys for Plaintiff

EXHIBIT "A"

FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT

APPLICA #: 60JOUBERT.DAN                    12/31/98
LOAN #:        1212296
MAJESTIC MORTGAGE INC
2699 LEE ROAD, SUITE 101
WINTER PARK, FL 32789

Borrowe

DANIEL M JOUBERT

8787 SOUTHSIDE BLVD #1916
JACKSONVILLE, FL 32256

Property
12622 ASH HARBOR DRIVE
JACKSONVILLE, FL 32224

─────Itemization of Amount Financed─────

| | | | |
|---|---|---|---|
| $ | 116,056.46 | Total amount financed | $ 116,056.46 |
| $ | 50.00 | Lenders Inspection Fee | |
| $ | 2,323.00 | VA Funding Fee | |
| $ | 20.50 | Flood Cert | |
| $ | 23.04 | Interim Interest | |
| $ | 2,416.54 | Total prepaid finance charges | $ 2,416.54 |
| $ | 275.00 | Appraisal fee | |
| $ | 55.00 | Credit Report | |
| $ | 300.00 | Hazard Insurance Premium | |
| $ | 75.00 | Hazard insurance reserves | |
| $ | 581.20 | County tax reserves | |
| $- | 145.26 | Aggregate adjustment | |
| $ | 32.50 | OVERNIGHT TRANSFER | |
| $ | 1,173.44 | Total amount paid to others | |

THE FIRST PAYMENT FOR YOUR
VA 30 Year Loan

FOR:        $ 118,473.00
AT:            7.000000%
WHICH WILL PAY OFF IN    360 PAYMENTS

IS BROKEN DOWN AS FOLLOWS:

PRINCIPAL &/OR INTEREST  $     788.20

Mortgage Insurance                0.00

Taxes                                145.30

Insurance                            25.00

Other                                  0.00

TOTAL PAYMENT          $     958.50

LOAN AMOUNT (including financed VA Funding Fee)       $ 118,473.00

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 7.2034% | $ 167,700.46 | $ 116,056.46 | $ 283,756.92 |

─────Your Payment Schedule Will Be:─────
359 payments monthly of $      788.20  beginning February 1, 1999
1 payment of $       793.12  due on January 1, 2029

Security Interest:     You are giving a security interest in the property located at
                       12622 ASH HARBOR DRIVE, JACKSONVILLE, FL 32224.
Late Charge:           If payment is 15 days late, you will be charged  4.0000% of the payment.
Prepayment:            If you pay off early, you will not have to pay a penalty.
                       If you pay off early, you will not be entitled to a refund of part of the finance charge.
Assumption:            Someone buying your home may, subject to conditions, be allowed to assume the
                       remainder of the mortgage on the original terms.
This Obligation:       will NOT have a demand feature.
        Insurance: You may obtain property insurance from anyone you want that is acceptable to Lender.
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date,
prepayment refunds and penalties.

e means an estimate

I (We) hereby acknowledge receiving a completed copy of this disclosure.        Date DEC 31 1998

DANIEL M JOUBERT

EXHIBIT "B"

## A. SETTLEMENT STATEMENT

**U.S. Department of Housing and Urban Development**

OMB No. 2502-0265

**B. Type of Loan**

| 1. __ FHA   2. __ FmHA   3. __ Conv. Unins. | 6. File Number | 7. Loan Number | 8. Mortgage Insurance Case No.# |
|---|---|---|---|
| 4. X VA   5. __ Conv. Ins. | A7783 | 1212296 | LH-1185558 |

**C. NOTE:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked (P.O.C.) were paid outside the closing; they are shown here for information purposes and are not included in the t

| D. Name and Address of Borrower | E. Name and Address of Seller | F. Name and Address of Lender |
|---|---|---|
| DANIEL H. JOUBERT | MARONDA HOMES, INC. OF FLORIDA | MAJESTIC MORTGAGE, INC. 2699 LEE ROAD SUITE 101 WINTER PARK, FL 32789 |
| 12622 ASH HARBOR DRIVE JACKSONVILLE, FL 32224 | 11202 ST. JOHNS IND. PKWY JACKSONVILLE, FL 32246 | |

| G. Property Location | H. Settlement Agent | |
|---|---|---|
| 12622 ASH HARBOR DRIVE JACKSONVILLE, FL 32224 LOT 78 ASHTON HILLS UNIT TWO | AMERICAN FIRST COAST TITLE SERVICES, INC. | |
| | Place of Settlement 2485 Monument Road, Suite 10 Jacksonville, FL  32225 | I. Settlement Date 12/31 DO:   12/31 |

| J.   SUMMARY OF BORROWER'S TRANSACTION: | | K.   SUMMARY OF SELLER'S TRANSACTION: | |
|---|---|---|---|
| **100. Gross Amount Due From Borrower** | | **400. Gross Amount Due To Seller** | |
| 101. Contract sales price | 116,150.00 | 401. Contract sales price | 116,15 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 6,343.83 | 403. | |
| 104. 1998 ASSN DUES | 0.44 | 404. | |
| 105. 1999 ASSN DUE | 162.00 | 405. | |
| **Adjustments for items paid by seller in advance** | | **Adjustments for items paid by seller in advance** | |
| 106. City/town taxes          to | | 406. City/town taxes          to | |
| 107. County taxes   12/31  to   12/31 | 0.24 | 407. County taxes   12/31  to   12/31 | |
| 108. Assessments          to | | 408. Assessments          to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | 122,656.51 | **420. GROSS AMOUNT DUE TO SELLER** | 116,150 |
| **200. Amounts Paid By or In Behalf of Borrower** | | **500. Reductions In Amount Due To Seller** | |
| 201. Deposit or earnest money | 1,000.00 | 501. Excess Deposit (see instructions) | 1,000 |
| 202. Principal amount of new loan(s) | 118,473.00 | 502. Settlement charges to seller (line 1400) | 761 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| **Adjustments for items unpaid by seller** | | **Adjustments for items unpaid by seller** | |
| 210. City/town taxes          to | | 510. City/town taxes          to | |
| 211. County taxes          to | | 511. County taxes          to | |
| 212. Assessments          to | | 512. Assessments          to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BORROWER** | 119,473.00 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | 1,761 |
| **300. Cash At Settlement From or To Borrower** | | **600. Cash At Settlement To or From Seller** | |
| 301. Gross amount due from borrower (line 120) | 122,656.51 | 601. Gross amount due to seller (line 420) | 116,150. |
| 302. Less amounts paid by/for borrower (line 220) | 119,473.00 | 602. Less reduction amount due seller (line 520) | 1,761. |
| 303. CASH   FROM   BORROWER | 3,183.51 | 603. CASH   TO   SELLER | 114,388.7 |

Settlement Agent hereby expressly reserves the right to deposit any amounts collected for disbursement in an interest bearing account in a Federally insured institution and credit any interest so earned to its own account.

Received $32⁵⁰ Cash

Christine Fugges

12-31-1998 at  3:14 PM

RESPA, HB 4305.2 -- REV. HUD-1 (3/86)

## L. SETTLEMENT CHARGES:

| | | | FILE NO.# A7783 | | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS SETTLEMENT |
|---|---|---|---|---|---|---|---|
| 700. TOTAL SALES/BROKER'S COMMISSION based on price $ | | | @ | | = | | |
| Division of commission (line 700) as follows: | | | | | | | |
| 701. $ | | to | | | | | |
| 702. $ | | to | | | | | |
| 703. Commission paid at Settlement | | | | | | | |
| 704. | | | | | | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | | | P.O.C. Items | | | |
| 801. Loan Origination Fee | % | | | | | | |
| 802. Loan Discount | % | | | | | | |
| 803. Appraisal Fee | to | MAJESTICE MORTGAGE | | | | 275.00 | |
| 804. Credit Report | to | MAJESTICE MORTGAGE | | | | 55.00 | |
| 805. Final Inspection Fee | to | JAMES MCMURTY | | | | 50.00 | |
| 806. Mtg. Ins. Application Fee | to | | | | | | |
| 807. Assumption Fee | to | | | | | | |
| 808. BROKER PREMIUM | | MAJESTIC BY OKMC | | | 1925.19 | | |
| 809. VA FUNDING FEE | | DEPT OF VETERAN AFFAIRS | | | | 2,323.00 | |
| 810. BROKER PROCESSING FEE | | MAJESTICE MORTGAGE | | | | | 2 |
| 811. COURIER FEE | | MAJESTICE MORTGAGE | | | | | |
| 812. FLOOD CERT | | OLD KENT MORTGAGE | | | | 20.50 | |
| 813. | | | | | | | |
| 814. | | | | | | | |
| 815. | | | | | | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | | | | | |
| 901. Interest from 12/31/98 to 01/01/99 @ $ 23.0364 /day 1 Days | | | | | | 23.04 | |
| 902. Mortgage Insurance Premium for | | | to | | | | |
| 903. Hazard Insurance Premium for ONErs | | to TEACHERS INSURANCE | | | | 300.00 | |
| 904. | | | | | | | |
| 905. | | | | | | | |
| **1000. RESERVES DEPOSITED WITH LENDER FOR** | | | | | | | |
| 1001. Hazard Insurance | 3 mo.@$ 25.00 /mo. | | | | | 75.00 | |
| 1002. Mortgage Insurance | mo.@$ /mo. | | | | | | |
| 1003. City property taxes | mo.@$ /mo. | | | | | | |
| 1004. County property taxes | 4 mo.@$ 145.30 /mo. | | | | | 581.20 | |
| 1005. Annual Assessments | mo.@$ /mo. | | | | | | |
| 1006. | mo.@$ /mo. | | | | | | |
| 1007. | mo.@$ /mo. | | | | | | |
| 1008. Aggregate Credit for Hazard/Flood Ins, City/County Prop Taxes, Mortgage Ins & Annual Assessments | | | | | | -145.26 | |
| **1100. TITLE CHARGES** | | | | | | | |
| 1101. Settlement or closing fee | to | AFC TITLE SERVICES, INC | | | | 25.00 | |
| 1102. Abstract or title search | to | AMERICAN FIRST COAST TITLE | | | | 100.00 | |
| 1103. Title examination | to | AFC TITLE SERVICES, INC | | | | 25.00 | |
| 1104. Title Insurance binder | to | | | | | | |
| 1105. Document preparation | to | OLD KENT MORTGAGE | | | | | 165 |
| 1106. Notary fees | to | | | | | | |
| 1107. Attorney's fees | to | | | | | | |
| (Includes above Items No: | | | | ) | | | |
| 1108. Title Insurance | to | AFC TITLE SERVICES, INC | | | | 813.00 | 4 |
| (Includes above Items No: | | | | ) | | | |
| 1109. Lender's coverage $ 118,473.00 ---- 667.50 | | | | | | | |
| 1110. Owner's coverage $ 116,150.00 150.00 Incl 25 Risk Prem | | | | | | | |
| 1111. FLORID FORM 9 END. Incl 63.3 Risk Rate to AFC TITLE SER | | | | | | 96.75 | |
| 1112. ALTA 8.1, 5.1 END. Incl 50 Risk Rate to AFC TITLE SERVI | | | | | | 70.00 | |
| 1113. COURIER FEES | | AFC/FED EX/BARRY ROSS | | | | 75.00 | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | | | | | |
| 1201. Recording fees | Deed $ 6.00 ; Mortgage $ 46.50 ; Releases $ 10.50 | | | | | 63.00 | |
| 1202. City/county/stamps | Deed $ ; Mortgage $ | | | | | | |
| 1203. State tax/stamps | Deed $ 813.40 ; Mortgage $ 414.75 | | | | | 1,228.15 | |
| 1204. Intangible Tax - | | | | | | 236.95 | |
| 1205. NOTICE OF TERMINATION | | | | | | 21.00 | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | | | | | | |
| 1301. Survey | to | RICHARD A. MILLER & ASSOCIATES | 200.00S | | | | |
| 1302. Pest Inspection | to | TURNER PEST CONTROL | 200.00S | | | | |
| 1303. UNDERWRITING FEE | | OLD KENT MORTGAGE | | | | 225.( | |
| 1304. TAX SERVICE FEE | | TRANSAMERICA | | | | 62.( | |
| 1305. OVERNIGHT TRANSFER FEE | | OLD KENT MORTGAGE | | | | 32.50 | |
| 1306. | | | | | | | |
| 1307. | | | | | | | |
| 1308. | | | | | | | |
| **1400. TOTAL SETTLEMENT CHARGES (enter on lines 103 and 502, Sections J and K)** | | | | | | 6,343.83 | 761.5 |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all recepts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

DANIEL M. JOUBERT _____ Buyer/Borrower

MARONDA H _____ Buyer/Borrower

**JOHN MOLYNEAUX**
**VICE PRESIDENT**

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

AMERICAN FIRST COAST TITLE SERVICES, INC. _____ Settlement Agent

DEC 3 1 1998

12-31-1998 at 3:14 PM

RESPA, HB 4305.2 – REV. HUD-1 (3/86)

EXHIBIT "BB"

# A. SETTLEMENT STATEMENT

U.S. Department of Housing
and Urban Development

OMB No. 2502-0265

| B. Type of Loan | | | |
|---|---|---|---|
| 1. ___ FHA   2. ___ FmHA   3. ___ Conv. Unins.<br>4. X VA   5. ___ Conv. Ins. | 6. File Number<br>A7783 | 7. Loan Number<br>1212296 | 8. Mortgage Insurance Case No.#<br>LH-1185558 |

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked (P.O.C.) were paid outside the closing; they are shown here for information purposes and are not included in the to

| D. Name and Address of Borrower | E. Name and Address of Seller | F. Name and Address of Lender |
|---|---|---|
| DANIEL M. JOUBERT | MARONDA HOMES, INC. OF FLORIDA | MAJESTIC MORTGAGE, INC.<br>2699 LEE ROAD SUITE 101<br>WINTER PARK, FL 32789 |
| 12622 ASH HARBOR DRIVE<br>JACKSONVILLE, FL 32224 | 11202 ST. JOHNS IND. PKWY<br>JACKSONVILLE, FL 32246 | |

| G. Property Location | H. Settlement Agent<br>AMERICAN FIRST COAST TITLE SERVICES, INC. | |
|---|---|---|
| 12622 ASH HARBOR DRIVE<br>JACKSONVILLE, FL 32224<br>LOT 78 ASHTON HILLS UNIT TWO | Place of Settlement<br>2485 Monument Road, Suite 10<br>Jacksonville, FL  32225 | I. Settlement Date<br>12/31/<br>DD:   12/31/ |

| J. SUMMARY OF BORROWER'S TRANSACTION: | | K. SUMMARY OF SELLER'S TRANSACTION: | |
|---|---|---|---|
| **100. Gross Amount Due From Borrower** | | **400. Gross Amount Due To Seller** | |
| 101. Contract sales price | 116,150.00 | 401. Contract sales price | 116,150 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 6,311.33 | 403. | |
| 104. 1998 ASSN DUES | 0.44 | 404. | |
| 105. 1999 ASSN DUE | 162.00 | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/town taxes          to | | 406. City/town taxes          to | |
| 107. County taxes   12/31  to   12/31 | 0.24 | 407. County taxes   12/31  to   12/31 | 0 |
| 108. Assessments          to | | 408. Assessments          to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | 122,624.01 | **420. GROSS AMOUNT DUE TO SELLER** | 116,150. |
| **200. Amounts Paid By or In Behalf of Borrower** | | **500. Reductions In Amount Due To Seller** | |
| 201. Deposit or earnest money | 1,000.00 | 501. Excess Deposit (see instructions) | 1,000. |
| 202. Principal amount of new loan(s) | 118,473.00 | 502. Settlement charges to seller (line 1400) | 761. |
| 203. Existing loan(s) subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/town taxes          to | | 510. City/town taxes          to | |
| 211. County taxes          to | | 511. County taxes          to | |
| 212. Assessments          to | | 512. Assessments          to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BORROWER** | 119,473.00 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | 1,761.5 |
| **300. Cash At Settlement From or To Borrower** | | **600. Cash At Settlement To or From Seller** | |
| 301. Gross amount due from borrower (line 120) | 122,624.01 | 601. Gross amount due to seller (line 420) | 116,150.2 |
| 302. Less amounts paid by/for borrower (line 220) | 119,473.00 | 602. Less reduction amount due seller (line 520) | 1,761.5 |
| **303. CASH   FROM   BORROWER** | 3,151.01 | **603. CASH   TO   SELLER** | 114,388.7 |

Settlement Agent hereby expressly reserves the right to deposit any amounts collected for disbursement in an interest bearing account in a Federally insured institution and credit any interest so earned to its own account.

| L. SETTLEMENT CHARGES: | | FILE NO.#: A7783 | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER FUNDS A SETTLEM |
|---|---|---|---|---|---|
| 700. TOTAL SALES/BROKER'S COMMISSION ...sed on price $ | | @ | - | | |
| Division of commission (line 700) as follows: | | | | | |
| 701. $ | to | | | | |
| 702. $ | to | | | | |
| 703. Commission paid at Settlement | | | | | |
| 704. | | | | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | | P.O.C. Items | | |
| 801. Loan Origination Fee | % | | | | |
| 802. Loan Discount | % | | | | |
| 803. Appraisal Fee | to | MAJESTICE MORTGAGE | | ~275.00~ | |
| 804. Credit Report | to | MAJESTICE MORTGAGE | | ~55.00~ | |
| 805. Final Inspection Fee | to | JAMES MCNURTY | | 50.00 0 | |
| 806. Mtg. Ins. Application Fee | to | | | | |
| 807. Assumption Fee | to | | | | |
| 808. BROKER PREMIUM | | MAJESTIC BY OKMC | 1925.19 | | |
| 809. VA FUNDING FEE | | DEPT OF VETERAN AFFAIRS | | ~2,323.00~ | |
| 810. BROKER PROCESSING FEE | | MAJESTICE MORTGAGE | | | 27 |
| 811. COURIER FEE | | MAJESTICE MORTGAGE | | | 3 |
| 812. FLOOD CERT | | OLD KENT MORTGAGE | | 20.50 20. | |
| 813. | | | | | |
| 814. | | | | | |
| 815. | | | | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | | | |
| 901. Interest from 12/31/98 to 01/01/99 @ $ 23.0364 /day 1 Days | | | | 23.04 400. | |
| 902. Mortgage Insurance Premium for to | | | | | |
| 903. Hazard Insurance Premium for OMFrs to TEACHERS INSURANCE | | | | 300.00 300 | |
| 904. | | | | | |
| 905. | | | | | |
| **1000. RESERVES DEPOSITED WITH LENDER FOR** | | | | | |
| 1001. Hazard Insurance | 3 mo.@$ 25.00 /mo. | | | 75.00 64 | |
| 1002. Mortgage Insurance | mo.@$ /mo. | | | | |
| 1003. City property taxes | mo.@$ /mo. | | | | |
| 1004. County property taxes | 4 mo.@$ 145.30 /mo. | | | 581.20 447 302 | |
| 1005. Annual Assessments | mo.@$ /mo. | | | | |
| 1006. | mo.@$ /mo. | | | | |
| 1007. | mo.@$ /mo. | | | | |
| 1008. Aggregate Credit for Hazard/Flood Ins, City/County Prop Taxes, Mortgage Ins & Annual Assessments | | | | -145.26 | |
| **1100. TITLE CHARGES** | | | | | |
| 1101. Settlement or closing fee | to | AFC TITLE SERVICES, INC | | 25.00 | |
| 1102. Abstract or title search | to | AMERICAN FIRST COAST TITLE | | 100.00 150. | |
| 1103. Title examination | to | AFC TITLE SERVICES, INC | | 25.00 | |
| 1104. Title insurance binder | to | | | | |
| 1105. Document preparation | to | OLD KENT MORTGAGE | | | 165 |
| 1106. Notary fees | to | | | | |
| 1107. Attorney's fees | to | | | | |
| (Includes above items No: | | ) | | | |
| 1108. Title Insurance | to | AFC TITLE SERVICES, INC | | 813.00 871 | 4 |
| (Includes above items No: | | ) | | | |
| 1109. Lender's coverage $ 118,473.00 ---- 667.50 | | | | | |
| 1110. Owner's coverage $ 116,150.00 150.00 Incl 25 Risk Prem | | | | | |
| 1111. FLORID FORM 9 END. Incl 63.3 Risk Rate to AFC TITLE SER | | | | 96.75 | |
| 1112. ALTA 8.1, 5.1 END. Incl 50 Risk Rate to AFC TITLE SERVI | | | | 70.00 | |
| 1113. COURIER FEES | | AFC/FED EX/BARRY ROSS | | 75.00 | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | | | |
| 1201. Recording fees | Deed $ 6.00 ; Mortgage $ 46.50 ; Releases $ 10.50 | | | 63 00 40. | |
| 1202. City/county/stamps | Deed $ ; Mortgage $ | | | | |
| 1203. State tax/stamps | Deed $ 813.40 ; Mortgage $ 414.75 | | | 1,228.15 | |
| 1204. Intangible Tax - | | | | 236.95 | |
| 1205. NOTICE OF TERMINATION | | | | 21.00 | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | | | | |
| 1301. Survey | to | RICHARD A. MILLER & ASSOCIATES | 200.00S | | 200 |
| 1302. Pest Inspection | to | TURNER PEST CONTROL | 200.00S | | 150 |
| 1303. UNDERWRITING FEE | | OLD KENT MORTGAGE | | | 225. |
| 1304. TAX SERVICE FEE | | TRANSAMERICA | | | 62 |
| 1305. | | | | | |
| 1306. | | | | | |
| 1307. | | | | | |
| 1308. | | | | | |
| **1400. TOTAL SETTLEMENT CHARGES** (enter on lines 103 and 502, Sections J and K) | | | | 6,311.33 | 761. |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements ma on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

DANIEL M. JOUBERT          Buyer/Borrower          MARONDA HOMES, INC. OF FLORIDA          Se

_____          Buyer/Borrower          _____          Se

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordan with this statement.

AMERICAN FIRST COAST TITLE SERVICES, INC.          Settlement Agent          _____          DA

12-31-1998 at 11:26 AM          RESPA, HB 4305.2 -- REV. HUD-1 (3/86)

EXHIBIT "C"

Prepared by: Judy McGillin

AP# 60JOUBERT.DAN
LN# 1212296

——————————— [Space Above This Line For Recording Data] ———————————

# MORTGAGE

## NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

THIS MORTGAGE ("Security Instrument") is given on        December 31, 1998        . The mortgagor is
DANIEL M JOUBERT

,whose address is

8787 SOUTHSIDE BLVD #1916, JACKSONVILLE, FL 32256

("Borrower"). This Security Instrument is given to
MAJESTIC MORTGAGE INC

which is organized and existing under the laws of                                                  , and whose
address is  2699 LEE ROAD, SUITE 101, WINTER PARK, FL 32789
                                        ("Lender"). Borrower owes Lender the principal sum of
One Hundred Eighteen Thousand Four Hundred Seventy Three and no/100
                                        Dollars (U.S. $ 118,473.00        ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for
monthly payments, with the full debt, if not paid earlier, due and payable on        January 1, 2029        .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals,
extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to
protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this
Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following
described property located in                              DUVAL                              County, Florida:
LOT 58, ASHTON HILLS UNIT TWO, ACCORDING TO PLAT THEREOF RECORDED IN PLAT BOOK 52,
PAGES 3, 3A, 3B, 3C AND 3D, OF THE CURRENT PUBLIC RECORDS OF DUVAL COUNTY, FLORIDA.

which has the address of  12622 ASH HARBOR DRIVE, JACKSONVILLE                    [Street, City],
Florida        32224              [Zip Code] ("Property Address");

FLORIDA-Single Family-FNMA/FHLMC UNIFORM
                    INSTRUMENT  Form 3010 9/90
VMP -6V(FL) (9309) 03            Amended 5/91
            VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 8        MW 09/93 04        Initials:

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal and Interest; Prepayment and Late Charges. Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. Funds for Taxes and Insurance. Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. Application of Payments. Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the

enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

-6V(FL) (9309).03                              Page 3 of 6                              Form 3010   9/90

Initials: _____

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

-6V(FL) (9309).03                                   Page 5 of 6                                   Form 3010   9/90

Initials: _____

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

21. **Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

22. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

23. **Attorneys' Fees.** As used in this Security Instrument and the Note, "attorneys' fees" shall include any attorneys' fees awarded by an appellate court.

24. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☒ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☒ VA Rider | ☐ Other(s) [specify] | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.
Signed, sealed and delivered in the presence of:

_____ (Seal)
DANIEL M JOUBERT                                  -Borrower

_____ (Seal)
                                                 -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                               -Borrower

STATE OF FLORIDA,              DUVAL                    County ss:

The foregoing instrument was acknowledged before me this     December 31, 1998                          by
DANIEL M JOUBERT

who is personally known to me or who has produced                           as identification.

_____
Notary Public

-6V(FL) (9309).03                    Page 6 of 6                         Form 3010   9/90

# NOTE

AP# 60JOUBERT.DAN      LN# 1212296

## NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

December 31, 1998                           WINTER PARK          Florida
[Date]                                      [City]               [State]

12622 ASH HARBOR DRIVE,JACKSONVILLE,FL 32224
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 118,473.00          (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is
MAJESTIC MORTGAGE INC
. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of      7.0000     %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**

(A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the     1st    day of each month beginning on      February 1
1999     . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on
January 1, 2029          , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 2699 LEE ROAD, SUITE 101, WINTER PARK, FL 32789
or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 788.20

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of      15    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be     4.0000     % of my overdue payment. I will pay this late charge promptly but only once on each late payment.

FLORIDA FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac Uniform Instrument

Form 3200.10 12/83
VMP -5V(FL) (9810)                        Amended 10/98
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 2   MW 10/98                    Initials: _____

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. ALLONGE TO THIS NOTE**

If an allonge providing for payment adjustments or for any other supplemental information is executed by the Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge ☐ Other [Specify] ☐ Other [Specify]

**11. DOCUMENTARY TAX**

The state documentary tax due on this Note has been paid on the Mortgage securing this indebtedness.

**12. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Regulations (38 C.F.R. Part 36) issued under the Department of Veterans Affairs ("VA") Guaranteed Loan Authority (38 U.S.C. Chapter 37) and in effect on the date of loan closing shall govern the rights, duties and liabilities of the parties to this loan and any provisions of this Note which are inconsistent with such regulations are hereby amended and supplemented to conform thereto.


WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)        _____ (Seal)
                            -Borrower       DANIEL M JOUBERT          -Borrower
SSN:                                        SSN: 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

_____ (Seal)        _____ (Seal)
                            -Borrower                                 -Borrower
SSN:                                        SSN:           *[Sign Original Only]*

-5V(FL) (9810)                    Page 2 of 2                    Form 3200.10 12/83